OPINION
{¶ 1} This is an accelerated calendar case, submitted to this court on the record and the briefs of the parties. Appellant, Karen Hancock, appeals the judgment entered by the Conneaut Municipal Court. Hancock was convicted of two counts of driving under the influence of alcohol ("DUI").
 {¶ 2} On January 27, 2004, Hancock was driving her truck in the drive-thru lane at the McDonald's Restaurant in Conneaut, Ohio. Apparently, the employees of McDonald's believed Hancock was intoxicated. Therefore, one of the employees called the police to report the incident. In addition, the McDonald's employees "stalled" by delaying Hancock's order.
 {¶ 3} In response to the call, Sergeant Randy Poore of the Conneaut Police Department responded and parked his cruiser on Buffalo Street, within viewing distance of the McDonald's drive-thru window. He observed Hancock pull away from the drive-thru window and pull into a parking spot, where she hit the curb. Thereafter, Sergeant Poore pulled behind Hancock and initiated a traffic stop.
 {¶ 4} Sergeant Poore testified that Hancock had an odor of alcohol beverage on her breath, her speech was slurred, and her eyes were red and watery. Eventually, Sergeant Poore had Hancock step out of her truck. By that time, Officer Michael Colby of the Conneaut Police Department was also on the scene. Officer Colby testified that Hancock had slurred speech and needed to use the back of her truck for balance. In addition, he noted that it appeared she had urinated on herself.
 {¶ 5} Officer Colby asked Hancock if she would perform several field sobriety tests. At first, Hancock responded that it would not make a difference whether she did the tests, because she had lost her license due to a prior DUI. Next, she refused to perform the one-leg stand, walk-and-turn, and horizontal gaze nystagmus tests. Due to Hancock's actions, she was arrested for DUI. She later failed a breath test.
 {¶ 6} Hancock was charged with two counts of DUI, one each in violation of R.C. 4511.19(A)(1) and 4511.19(A)(6).[1] The first count was operating a vehicle under the influence of alcohol, and the second was a "per se" violation for operating a vehicle with an alcohol concentration in excess of seventeen-hundredths of a gram per standard unit of breath. Hancock filed a motion to suppress the stop. The trial court denied her motion. Following the hearing on the motion to suppress, Hancock pled no contest to the charges against her. The trial court found her guilty of both counts of DUI. Hancock was sentenced to one hundred eighty days in jail, with one hundred twenty days suspended. In addition, she was ordered to pay a $650 fine and was placed on probation.
 {¶ 7} Hancock raises the following assignments of error:
 {¶ 8} "[1.] The Conneaut Police Department had no justifiable cause to arrest the defendant-appellant, Karen Hancock.
 {¶ 9} "[2.] Neither the citizen informant nor the police dispatcher were presented at the motion to suppress/dismiss hearing to establish a predicate for the purported dispatch."
 {¶ 10} Due to the similar nature of Hancock's assigned errors, they will be addressed in a single analysis.
 {¶ 11} "Appellate review of a motion to suppress presents a mixed question of law and fact."[2] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[3] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[4]
 {¶ 12} Hancock claims the state needed to call the employee from McDonald's and the police dispatcher to testify regarding the initial call to the police and subsequent dispatch. For the following reasons, we disagree.
 {¶ 13} To justify an investigatory stop, now known as a Terry stop, the officer must be able to "point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion."[5] "Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity."[6]
 {¶ 14} Sufficiently "erratic" driving is justification to support aTerry stop based on the officer's reasonable suspicion that the driver is operating the vehicle under the influence of alcohol.[7] In the case sub judice, Sergeant Poore testified that he initiated the stop because he watched Hancock hit the curb. Striking a curb is an instance of erratic driving that can justify an investigative stop.[8] Sergeant Poore testified that Hancock's truck was moving about three m.p.h. and came to an abrupt stop when it hit the curb.
 {¶ 15} In State v. Pandolfi, an officer received a dispatch based on an informant's tip that the defendant was driving under the influence of alcohol. The officer responded, followed the defendant's car, and personally observed the defendant's car cross the centerline.[9] This court held "[i]f the trial court found [the officer's] testimony credible, these observations alone * * * would have given [the officer] reasonable suspicion, based on specific and articulable facts, that appellant was driving under the influence of alcohol."[10]
 {¶ 16} The reason Sergeant Poore was in the area is irrelevant. He witnessed, first hand, Hancock strike the curb. Thereafter, he had reasonable suspicion of criminal activity to justify the stop. Since Sergeant Poore did not rely on the information obtained from the dispatch as his basis for initiating the stop, the state was not required to call the McDonald's employee or the police dispatcher to establish the factual predicate for the stop.
 {¶ 17} After Hancock was stopped, the officers compiled probable cause to arrest her. Collectively, the officers testified that Hancock had a strong odor of an alcoholic beverage on her breath, her eyes were red and watery, her speech was slurred, and she needed to use her truck for balance. This court has held that similar factors can form the basis for probable cause to arrest a suspect for DUI.[11] In addition to the physical conditions, Hancock refused to submit to the field sobriety tests. This court has held that such failure may be taken into account when determining whether an officer had probable cause to effectuate an arrest.[12] Based on a totality of the circumstances, the officers had probable cause to arrest Hancock for DUI.
 {¶ 18} Hancock's assignments of error are without merit.
 {¶ 19} The judgment of the trial court is affirmed.
Ford, P.J., Grendell, J., concur.
[1] Legislative enactments subsequent to Hancock's arrest have renumbered the provisions of the statute.
[2] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[3] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[4] Id., citing State v. McNamara (1997), 124 Ohio App.3d 706.
[5] Terry v. Ohio (1968), 392 U.S. 1, 21.
[6] Maumee v. Weisner (1999), 87 Ohio St.3d 295, paragraph one of the syllabus.
[7] Mentor v. Phillips (Dec. 29, 2000), 11th Dist. No. 99-L-119, 2000 Ohio App. LEXIS 6207, at *6, quoting State v. Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649.
[8] See State v. Lower (June 19, 1998), 11th Dist. No. 97-P-0084, 1998 Ohio App. LEXIS 2753, at *7.
[9] State v. Pandolfi, 11th Dist. No. 2001-L-061, 2002-Ohio-7265, at ¶ 4.
[10] Id. at ¶ 19.
[11] See, e.g., State v. Rendina (Dec. 23, 1999), 11th Dist. No. 98-L-129, 1999 Ohio App. LEXIS 6269, at *16-17.
[12] State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶ 19.