[Cite as *State v. Dunlap*, 2016-Ohio-5197.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 15 CAA 07 0051 |
| JEFFREY DUNLAP | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common Pleas, Case No. 11 CR I 09 0505


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     August 2, 2016


APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

| | |
|---|---|
| CAROL HAMILTON O'BRIEN | BRIAN G. JONES |
| PROSECUTING ATTORNEY | ELIZABETH E. OSORIO |
| JAHAN S. KARAMALI | LAW OFFICE OF BRIAN JONES |
| ASSISTANT PROSECUTOR | 35 North Sandusky Street |
| 140 North Sandusky Street | Suite 200 |
| Delaware, Ohio 43015 | Delaware, Ohio 43015 |

*Wise, J.*

{¶1} Appellant Jeffrey Dunlap appeals the decision of the Court of Common Pleas, Delaware County, which denied his post-sentence motion to withdraw his 2012 guilty plea on one count of domestic violence. Appellee is the State of Ohio. The relevant procedural facts leading to this appeal are as follows:

{¶2} On September 23, 2011, the Delaware County Grand Jury issued an indictment charging appellant as follows: (1) Kidnapping (R.C. 2905.01(A)(4)), a felony of the first degree; (2) Attempted Rape (R.C. 2923.02(A) and 2907.02(A)(2)), a felony of the second degree; (3) Abduction (R.C. 2905.02(A)(2)), a felony of the third degree; and (4) Domestic Violence (R.C. 2919.25(A)), a misdemeanor of the first degree.

{¶3} On September 28, 2011, appellant appeared before the trial court for arraignment, at which time he entered a plea of not guilty on all counts.

{¶4} On March 1, 2012, following plea negotiations, appellant appeared with counsel and pled guilty, via an *Alford* plea, to Count 4 of the indictment, a first-degree misdemeanor charge of domestic violence. The State thereupon dismissed Counts 1 through 3 of the aforesaid indictment.

{¶5} On April 10, 2012, appellant was sentenced to one year of community control sanctions and was ordered to pay fines and costs.

{¶6} On November 7, 2014, more than two and one-half years later, appellant filed a motion to seal his record. Furthermore, on December 19, 2014, appellant filed a motion to withdraw his 2012 guilty plea.

{¶7} Appellant's motion to seal his record was implicitly denied.[1] Furthermore, following an evidentiary hearing, the trial court denied the motion to withdraw plea on June 8, 2015. Appellant filed a notice of appeal on July 8, 2015. He herein raises the following two Assignments of Error:

{¶8} "I. POST-CONVICTION COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN POST-CONVICTION COUNSEL FAILED TO CALL TRIAL COUNSEL AS A WITNESS DURING THE EVIDENTIARY HEARING HELD ON THE DEFENDANT'S MOTION TO VACATE PLEA.

{¶9} "II. THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FINDING THE DEFENDANT FAILED TO MEET THE BURDEN OF MANIFEST INJUSTICE THROUGH THE EXHIBITS AND TESTIMONY PRESENTED AT THE EVIDENTIARY HEARING HELD ON THE DEFENDANT'S MOTION TO VACATE PLEA.

I.

{¶10} In his First Assignment of Error, appellant contends he was deprived of the effective assistance of counsel during the evidentiary hearing on his post-sentence motion to withdraw his guilty plea.

{¶11} Crim.R. 32.1 states as follows: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

---

[1] *See* R.C. 2953.36, addressing exceptions to the sealing of criminal records.

{¶12} Appellant's present argument requires us to initially address whether an "ineffective assistance" claim is cognizable on appeal in regard to an attorney's performance in presenting to the trial court a post-sentence Crim.R. 32.1 motion.

{¶13} It is well-established that a criminal defendant's right to the assistance of counsel attaches at all "critical stages" of criminal proceedings. *See United States v. Wade,* 388 U.S. 218 (1967). Furthermore, the Ohio Supreme Court has made clear that Crim.R. 32.1 motions are part of the original criminal action and are not collateral proceedings. *See State v. Bush,* 96 Ohio St.3d 235, 773 N.E.2d 522, 2002-Ohio-3993, ¶ 13.

{¶14} In *State v. Emerson*, 5th Dist. Richland No. 14 CA 79, 2015-Ohio-2121, we adopted the reasoning of the Second District Court of Appeals in *State v. Strickland,* 2nd Dist. Montgomery No. 25673, 2014–Ohio–5451, which concluded that a criminal defendant is entitled to appointed counsel at a hearing on a motion to withdraw a plea, where the motion was made prior to sentencing, because he or she is entitled to counsel through each critical stage of the proceeding. *Emerson* at ¶ 25. We therefore held that an ineffective assistance claim is cognizable in regard to an attorney's performance in connection with a *presentence* Crim.R. 32.1 motion. *Id.* at ¶ 26. However, by analogy, Ohio courts "have generally held that there is no absolute right to appointed counsel in pursuing a *postsentence* motion to withdraw a guilty plea." *State v. McNeal*, 8th Dist. Cuyahoga No. 82793, 2004-Ohio-50, ¶ 8 (emphasis added), citing *State v. Watts* (1989), 57 Ohio App.3d 32, 33, 565 N.E.2d 1282 (6th Dist. Lucas). Other Ohio courts "have suggested that counsel may be necessary if the judge determines that an evidentiary hearing is required [on a postsentence Crim.R. 32.1 motion]." *McNeal, supra*, citing *State*

*v. Perry* (May 2, 1997), Trumbull App. No. 95-T-5315; *State v. Gibson,* Trumbull App. No. 2001-T-0094, 2002-Ohio-3153, ¶ 31. But our research reveals no clear case law in Ohio justifying an unfettered extension of our holding in *Emerson* beyond presentence Crim.R. 32.1 motions.  *See, also, State v. Potter,* 5ᵗʰ Dist. Stark No. 1995CA00027, 1995 WL 768607.

{¶15} The term "critical stage" in proceedings has been defined as "those situations in which there is risk that 'counsel's absence might derogate from the accused's right to a fair trial.' " *State v. Anderson*, 7th Dist. Belmont No. 14 BE 0041, 2016-Ohio-4651, ¶ 12, quoting *United States v. Wade,* supra, at 226. We note Crim.R. 32.1 itself does not prescribe a time limitation for filing a motion to withdraw plea after sentencing. *State v. Burkes*, 4th Dist. Scioto No. 13CA3582, 2014-Ohio-3311, ¶ 10. Where a defendant seeks to withdraw his or her plea after the trial court proceedings have concluded and sentencing has been accomplished (in some instances years afterward), he or she must meet the high "manifest injustice" standard, and such relief is "allowable only in extraordinary cases." *See State v. Aleshire,* Licking App.No. 09–CA–132, 2010–Ohio–2566, ¶ 60. Upon review, we therefore conclude a defendant's advancement of a postsentence motion to withdraw plea goes well beyond the critical stage of criminal proceedings, and we therefore will not recognize a claimed error based on ineffective assistance regarding counsel's performance in presenting said motion to the trial court.

{¶16} Accordingly, appellant's First Assignment of Error is overruled.

II.

**{¶17}** In his Second Assignment of Error, appellant contends the trial court abused its discretion in denying his Crim.R. 32.1 motion to withdraw his guilty plea, post-sentence. We disagree.

**{¶18}** Our review of a trial court's decision under Crim.R. 32.1 is limited to a determination of whether the trial court abused its discretion. *State v. Caraballo* (1985), 17 Ohio St.3d 66, 477 N.E.2d 627. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶19}** Ineffective assistance of trial counsel can form the basis for a claim of manifest injustice to support withdrawal of a guilty plea pursuant to Crim.R. 32.1. *See State v. Dalton,* 153 Ohio App.3d 286, 292, 2003–Ohio–3813, ¶ 18. However, under the "manifest injustice" standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *Aleshire, supra*, at ¶ 60. Furthermore, "* * * if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. * * *" *State v. Peterseim* (1980), 68 Ohio App.2d 211, 213, 428 N.E.2d 863, quoting *Kadwell v. United States* (C.A.9, 1963), 315 F.2d 667.

**{¶20}** The gist of appellant's grounds for relief in his Crim.R. 32.1 motion to withdraw plea is that he was under the impression that his domestic violence conviction could be expunged at some future point. At the April 23, 2015 evidentiary hearing on appellant's Crim.R. 32.1 motion, appellant, appellant's brother, and appellant's father all

testified. A subpoena was issued for appellant's trial counsel to appear, but for reasons not evident in the present record, he was not called to the stand, nor was a proffer of his expected testimony submitted to the court. However, a copy of an email from trial counsel to appellant, dated more than two years after the plea, includes language suggesting that trial counsel considered expungement feasible. *See* Defendant's Exhibit 2.

**{¶21}** The record reveals that Christopher Dunlap, appellant's brother, testified first. Christopher, who works as a bank loan officer, was involved in some of the meetings between appellant and trial counsel when plea issues were discussed. He recalled appellant's trial counsel telling them during one meeting: " 'These are the charges. After one year we can get this expunged.' " Tr., April 23, 2015, at 21. But Christopher noted on cross he did not recall anyone discussing expungement on the record or "in open court." Tr. at 30. He also agreed that the trial court had asked appellant on the day of the plea if there were any additional agreements or promises, to which appellant had replied "no." Tr. at 29. Christopher also testified that appellant's trial counsel told appellant expungement could be obtained "after one year," but the starting point of said one-year period was not clearly specified: "*** I would imagine – I assumed that it was [expungable] from the point in which he -- we stepped foot in the courtroom over here." Tr. at 26-27. The trial court appeared to take particular note, during the Crim.R. 32.1 hearing, that despite Christopher's asserted presence during many of appellant's meetings with his attorney, and despite the purported centrality of the expungement issue to appellant's plea decisions, Christopher remembered the issue coming up just one time in these meetings. *See* Tr. at 34.

**{¶22}** Kenneth Eugene Dunlap, appellant's father, testified next. Kenneth, now semi-retired and living in Georgia, recalled that he was present more often at the meetings between appellant and trial counsel than was Christopher, appellant's brother. Tr. at 53. It was his belief that "the option of getting the offense expunged was critical" when the plea was decided. Tr. at 45. During cross-examination, Kenneth stated that although he had "absolutely" wanted appellant to take the case to trial, he believed appellant did not want to go to court and was "scared to death." Tr. at 56. Kenneth agreed that appellant was scared of the potential consequences of losing at trial, including the possibility of sex offender registration. *Id.* Additionally, Kenneth conceded that he wasn't completely sure what appellant would have done if he had known his conviction would not be expungable, noting "I could never be sure of something like that, but I can believe what I think." Tr. at 57. Kenneth believed there was at least a possibility appellant would have taken the plea anyway, although he did not "think so." Tr. at 58.

**{¶23}** Appellant then testified as to the reasons he accepted the State's offer and entered his *Alford* plea in 2012 to the misdemeanor domestic violence charge. Tr. at 83. He indicated *inter alia* that getting the case resolved would have helped him in his child custody litigation, although appellant apparently waited until after these custody issues were settled to file for expungement on November 7, 2014. *See* Tr. at 83, 89. Appellant suggested that his brother, Christopher, did not "get the whole story." Tr. at 96. In sum, appellant testified that he "absolutely 100 percent positively" would not have entered his plea if he had known it was not expungable. *See* Tr. at 91. Appellant testified "*** I had no doubt that I could win the trial based on all the evidence that we had." Tr. at 93. He insisted: "*** I'm not a lawyer. I didn't go to Notre Dame law school. I don't know the law.

I listened to my attorney and I was advised on what the law is. So a promise and a special arrangement -- I thought that was the law, okay? [My trial attorney] told me it was an expungable offense if I did not get arrested or in trouble with the law, okay?" Tr. at 105. However, while it is not necessarily fatal to his Crim.R. 32.1 motion, appellant acknowledged that the Crim.R. 11(F) agreement he signed at his change of plea made no mention of expungement. Tr. at 105.

{¶24} The case of *City of Maple Heights v. McCants,* 8th Dist. Cuyahoga No. 80128, 2002-Ohio-1070, is instructive in the case *sub judice.* In *McCants*, a defendant claimed he had been induced into pleading no contest based on the prosecutor (as opposed to defense counsel) informing him that he could expunge his record. The Eighth District Court of Appeals held that appellant's reliance on that representation did not constitute grounds to withdraw his plea. The court referenced the observation of the Ohio Supreme Court that "[e]xpungement is an act of grace created by the State, and so is a privilege, not a right." *Id.*, citing *State v. Hamilton,* 75 Ohio St.3d 636, 639 (1996). The Eighth District Court proceeded to determine that the trial court had not erred in denying McCants' motion to withdraw his plea based on "his mere expectation of being able to apply for expungement." *Id.*

{¶25} In its June 8, 2015 judgment entry denying appellant's motion to withdraw his plea, the trial court in the case *sub judice* determined that the record was "devoid of any substantiation" for appellant's claim that sealing his record was a "prime reason" for him agreeing to the *Alford* plea. The court further noted that the plea resulted in the dismissal of three remaining felony charges, and that even though the plea agreement allowed for additional terms of the agreement to be spelled out, said portion was left blank.

Further, appellant, when asked during the plea hearing if there were any other agreements or promises made, had responded in the negative. In reference to appellant's witnesses for the hearing, the court emphasized that "[b]y virtue of their family relationship, they have an obvious interest in the outcome." Judgment Entry at 3.

{¶26} The Ohio Supreme Court has aptly held that "* * * the good faith, credibility and weight of the movant's assertions in support of the [Crim.R. 32.1] motion are matters to be resolved by [the trial] court." *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324, paragraph two of the syllabus. In this instance, we are unpersuaded the trial court abused its discretion in declining to find a manifest injustice warranting the extraordinary step of negating appellant's prior plea to domestic violence.

{¶27} Appellant's Second Assignment of Error is therefore overruled.

{¶28} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.

By: Wise, J.

Farmer, P. J., and

Delaney, J., concur.

JWW/d 0711